# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

AL-AMEEN I. MAZAHREH, BILLY NUNES DE ALMEIDA, BRIAN SWENSON, NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC., and COALITION OF NEW JERSEY FIREARM OWNERS A NEW JERSEY NONPROFIT CORPORATION,

)
)
)
)
)
)
)
)
)

Civil Action No. 1:20-cv-17598 - RMB-JS

*Plaintiffs*,

)
)

v.

)

GURBIR GREWAL, in his official capacity as Attorney General of New Jersey,

)
)
)

PATRICK J. CALLAHAN, in his official capacity as Superintendent of the New Jersey Division of State Police,

)
)
)
)

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

RICHARD J. MEDER, in his official capacity as Chief of the Medford Township Police Department,

)
)
)
)

MARK P. TARANTINO, in his official capacity as permitting Judge of the Superior Court of New Jersey, Law Division, Burlington County,

)
)
)
)
)

THOMAS BRYAN, in his official capacity as Chief of the Edison Township Police Department, *and*

)
)
)
)

JOSEPH L. REA, in his official capacity as permitting Judge of the Superior Court of New Jersey, Law Division, Middlesex County,

)
)
)
)

ROBERT BRENNAN, in his official capacity as Chief of the Hopatcong Township Police Department,

)
)
)
)

N. PETER CONFORTI, in his official capacity as permitting Judge of the Superior Court of New Jersey, Law Division, Sussex County,

)
)
)
)

*Defendants*.

Daniel L. Schmutter
HARTMAN & WINNICKI, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040
(201) 967-0590 (fax)
dschmutter@hartmanwinnicki.com
*Attorneys for Plaintiffs*

## LOCAL CIVIL RULE 10.1 STATEMENT

The mailing addresses of the parties to this action are:

Al-Ameen I. Mazahreh
2 Allington Court
Medford, New Jersey 08055

Billy Nunes De Almeida
59 Player Avenue
Edison, New Jersey 08817

Brian Swenson
6 Reading Road
Hopatcong, New Jersey 07843

National Rifle Association of America, Inc.
11250 Waples Mill Road
Fairfax, VA 22030

Association of New Jersey Rifle & Pistol Clubs, Inc.
5 Sicomac Road
Suite 292
North Haledon, New Jersey 07508

Coalition of New Jersey Firearm Owners
 a New Jersey Nonprofit Corporation
12 John Drive
Sewell, New Jersey 08080

Gurbir Grewal
Office of the Attorney General
Richard J. Hughes Justice Complex
25 Market Street, Box 080
Trenton, NJ 08625

Patrick J. Callahan
Office of the Superintendent
New Jersey State Police
P.O. Box 7068
1034 River Road
West Trenton, NJ 08628

Richard J. Meder, Police Chief
Medford Township Police Department
91 Union Street
Medford Township, NJ 08055

Hon. Mark P. Tarantino, J.S.C.
Superior Court of New Jersey
Burlington County Courthouse
49 Rancocas Road
Mount Holly, NJ 08060

Thomas Bryan, Police Chief
100 Municipal Blvd.
Edison, New Jersey 08817

Hon. Joseph L. Rea, J.S.C.
Superior Court of New Jersey
Middlesex County Courthouse
56 Paterson Street
New Brunswick, NJ 08903

Robert Brennan, Police Chief
Hopatcong Township Police Department
111 River Styx Road
Hopatcong, New Jersey 07843

N. Peter Conforti, J.S.C.
Superior Court of New Jersey
Sussex County Courthouse
43-47 High Street
Newton, NJ 07860

## INTRODUCTION

Plaintiffs Al-Ameen I. Mazahreh, Billy Nunes De Almeida, Brian Swenson, the National Rifle Association of America, Inc., the Association of New Jersey Rifle & Pistol Clubs, Inc., and the Coalition of New Jersey Firearm Owners a New Jersey Nonprofit Corporation, (collectively "Plaintiffs"), by and through the undersigned attorneys, file this Complaint against the above-captioned Defendants, in their official capacities for administering and enforcing the State's laws and regulations governing the carrying of firearms outside the home. Plaintiffs seek declaratory and injunctive relief: a declaration that New Jersey's limitation of the right to carry firearms to those very rare individuals who can satisfy licensing officials that they have a "justifiable need" to exercise that right is unconstitutional under the Second and Fourteenth Amendments to the United States Constitution, and an injunction compelling Defendants to refrain from enforcing that invalid limit and to issue handgun carry permits to Plaintiffs or to otherwise allow Plaintiffs to exercise their right to carry firearms outside the home. In support of their Complaint against Defendants, Plaintiffs hereby allege the following.

1.     The Second Amendment to the United States Constitution guarantees "the right of the people to keep *and bear* Arms." U.S. CONST. amend. II (emphasis added).  When the People, by enacting that amendment, enshrined in their fundamental charter the right to "carry weapons in case of confrontation" for the "core lawful purpose of self-defense," *District of Columbia v. Heller*, 554 U.S. 570, 592, 630 (2008), they did not mean to leave the freedom to exercise that right at the mercy of the very government officials whose hands they sought to bind. No, "[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Id.* (Emphasis in original.)

2.      In defiance of that constitutional guarantee, New Jersey has seized precisely the power forbidden it by the Second Amendment: the power to decide, on a case-by-case basis, whether an applicant for a permit to "carry weapons in case of confrontation," *id.* at 592, has, in their estimation, shown a sufficiently "justifiable need" that a permit should issue, N.J.S.A. 2C:58-4(c).

3.      Worse still, New Jersey has made clear that a general desire to carry a handgun for the purpose of self-defense—"the *central component*" of the Second Amendment, *Heller*, 554 U.S. at 599 (emphasis added)—is not a sufficiently good reason to exercise the right. Instead, according to New Jersey, an ordinary citizen must establish *specific threats or previous attacks* which put him or her in *special and unavoidable danger* to obtain a permit from the State to carry a firearm in public. That restriction is akin to a state law concluding that the general desire to advocate for lawful political change is not a sufficiently "justifiable need" to exercise the right to free speech, and it cuts to the very core of the Second Amendment, no less than such a restriction would gut the First.

4.      Indeed, the practical effect of New Jersey's "justifiable need" requirement is to make it wholly illegal and subject to extreme punishment of up to 10 years in prison for *typical* law-abiding citizens to carry handguns in public—for by definition, these ordinary citizens cannot show that they face a specific, unavoidable threat that poses a *special* danger to their safety.

5.      Plaintiff Al-Ameen I. Mazahreh is an ordinary, law-abiding citizen of New Jersey who wishes to carry firearms outside the home for the purpose of self-defense. He has passed all required background checks, completed all required firearm training courses, and met every other qualification imposed by New Jersey on the eligibility for a permit to carry firearms in public, except that, like the vast majority of ordinary, law-abiding New Jersey residents, he cannot

establish a unique clear and present threat to his safety. Accordingly, Defendant Richard J. Meder, determined that Mr. Mazahreh has not shown a "justifiable need" to exercise his Second Amendment rights and denied his permit application.  That result simply cannot be squared with the rights guaranteed by the Second Amendment.

6.      Plaintiff Billy Nunes De Almeida is an ordinary, law-abiding citizen of New Jersey who wishes to carry firearms outside the home for the purpose of self-defense. He is a firearms instructor, and in 2020, he passed the required background checks to obtain both federal and New Jersey firearms dealer's licenses.  He would have applied for a carry permit, but he knew that he cannot establish a unique clear and present threat to his safety. He knew he would not qualify based on "justifiable need" and that such an application would be futile.

7.      Plaintiff Brian Swenson is an ordinary, law-abiding citizen of New Jersey who wishes to carry firearms outside the home for the purpose of self-defense. He has passed the required background checks. He would have applied for a carry permit, but he knew that he cannot establish a unique clear and present threat to his safety. He knew he would not qualify based on his lack of "justifiable need" and that such application would be futile.

8.      Plaintiffs acknowledge that the result they seek is contrary to *Drake v. Filko*, 724 F.3d 426 (3d Cir. 2014), but, for the reasons explained in *Rogers v. Grewal*, ___ U.S. ___, 140 S. Ct. 1865 (2020) (Thomas, dissenting) and *Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017), that case was wrongly decided. They therefore institute this litigation to vindicate their Second Amendment rights and to seek to have *Drake* overruled.

## JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction over Plaintiffs' claim under 28 U.S.C. §§ 1331 and 1343.

10.      Plaintiffs seek remedies under 28 U.S.C. §§ 1651, 2201, and 2202 and 42 U.S.C. §§ 1983 and 1988.

11.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) & (b)(2).

## PARTIES

12.      Plaintiff Al-Ameen I. Mazahreh ("Mezahreh") is a citizen of the United States and a resident and citizen of the State of New Jersey. He resides at 2 Allington Court, Medford Township, NJ 08055.

13.      Plaintiff Billy Nunes De Almeida ("De Almeida") is a citizen of the United State and a resident and citizen of the State of New Jersey. He resides at 59 Player Avenue, Edison, New Jersey 08817.

14.      Plaintiff Brian Swenson ("Swenson") is a citizen of the United States and a resident and citizen of the State of New Jersey. He resides at 6 Reading Road, Hopatcong, New Jersey 07843.

15.      Plaintiff National Rifle Association of America, Inc. ("NRA") is a New York not-for-profit membership corporation whose principal place of business is 11250 Waples Mill Road, Fairfax, Virginia 22030. The NRA is America's oldest civil rights organization and is widely recognized as America's foremost defender of Second Amendment rights. The NRA was founded in 1871 by Union generals who, based on their experiences in the Civil War, desired to promote marksmanship and expertise with firearms among the citizenry. Today the NRA has approximately five million members, and its programs reach millions more. The NRA has a significant interest

in this case because the NRA does not view the Second Amendment as a homebound right, and the rights of its members are infringed by laws that preclude law-abiding individuals from carrying firearms outside the home for the constitutionally protected purpose of self-defense. NRA has more than 100,000 members who reside in New Jersey. NRA brings the claims herein on behalf of its members. Plaintiffs Mazahreh, De Almeida, and Swenson, are members of NRA.

16.     Plaintiff Association of New Jersey Rifle & Pistol Clubs, Inc. (the "ANJRPC") is a not-for-profit membership corporation, incorporated in the State of New Jersey in 1936 and represents its members. Its address is 5 Sicomac Road, Suite 292, North Haledon, New Jersey 07508. ANJRPC represents the interests of target shooters, hunters, competitors, outdoors people and other law abiding firearms owners. Among the ANJRPC's purposes is aiding such persons in every way within its power and supporting and defending the people's right to keep and bear arms, including the right of its members and the public to purchase, possess, and carry firearms. The New Jersey restrictions on the public carrying of firearms at issue in this case are thus a direct affront to ANJRPC's central mission. ANJRPC has tens of thousands of members who reside in New Jersey. ANJRPC brings the claims herein on behalf of its members. Plaintiffs Mazahreh, De Almeida, and Swenson, are members of ANJRPC.

17.     Plaintiff Coalition of New Jersey Firearm Owners a New Jersey Nonprofit Corporation ("CNJFO") is a not-for-profit membership corporation, incorporated in the State of New Jersey in 2015. Among the reasons CNJFO was formed were to challenge New Jersey's unconstitutional "justifiable need" requirement on behalf of New Jersey firearm owners and to advocate for lawful, safe, and responsible firearms ownership. CNJFO strives to return to the citizens of New Jersey the basic human right to effective self-defense and the right to keep and bear arms, rights that are guaranteed to all Americans by the Constitution but denied to New Jersey

residents by the State of New Jersey. CNJFO operates as a community based, grass roots organization. Its members hail from every county in New Jersey and represent a diverse cross-section of the New Jersey population. CNJFO's mission is to "Support the Second Amendment Through Education and Awareness." CNJFO brings the claims herein on behalf of its members. Plaintiffs Mazahreh, De Almeida, and Swenson, are members of CNJFO.

18.     Defendant Gurbir Grewal is the Attorney General of New Jersey. As Attorney General, he exercises, delegates, or supervises all the powers and duties of the New Jersey Department of Law and Public Safety, including the Division of State Police within that Department, which is responsible under N.J.S.A. 2C:58-4 for executing and enforcing New Jersey's laws and regulations governing the carrying of firearms in public. His official address is Office of The Attorney General, Richard J. Hughes Justice Complex, 25 Market Street, Box 080, Trenton, NJ 08625. He is being sued in his official capacity.

19.     Defendant Patrick J. Callahan is the Superintendent of the New Jersey Division of State Police. As Superintendent, subject to the oversight and supervision of the Attorney General, he exercises, delegates, or supervises all the powers and duties of the New Jersey Division of State Police, which is responsible under N.J.S.A. 2C:58-4 for executing and enforcing New Jersey's laws and regulations governing the carrying of firearms in public. His official address is Office of the Superintendent, New Jersey State Police, P.O. Box 7068, 1034 River Road, West Trenton, NJ 08628. He is being sued in his official capacity.

20.     Defendant Richard J. Meder is the Chief Police Officer of Medford Township, New Jersey. Pursuant to N.J.S.A. 2C:58-4, he is responsible for receiving applications from residents of Medford Township for a permit to carry a handgun, investigating the applicant, and either approving or denying the application. His official address is Medford Township Police

9

Department, 91 Union Street, Medford Township, NJ 08055. He is being sued in his official capacity.

21.     Defendant Hon. Mark P. Tarantino, J.S.C., is a Judge of the Superior Court of New Jersey, Law Division, Burlington County. Pursuant to N.J.S.A. 2C:58-4, he is responsible for reviewing applications from residents of Burlington County for a permit to carry a handgun, once those applications have been approved or denied by the Chief Police Officer or Superintendent, and either issuing or denying a permit. His official address is Burlington County Courthouse, 49 Rancocas Road, Mount Holly, NJ 08060.  He is being sued in his official capacity, insofar as he performs the functions delegated him by N.J.S.A. 2C:58-4.

22.     Defendant Thomas Bryan is the Chief Police Officer of Edison, New Jersey. Pursuant to N.J.S.A. 2C:58-4, he is responsible for receiving applications from residents of Edison Township for a permit to carry a handgun, investigating the applicant, and either approving or denying the application. His official address is Edison Police Department, 100 Municipal Boulevard, Edison, New Jersey 08817. He is being sued in his official capacity.

23.     Defendant Hon. Joseph L. Rea is a Judge of the Superior Court of New Jersey, Law Division, Middlesex County. Pursuant to N.J.S.A. 2C:58-4, he is responsible for reviewing applications from residents of Middlesex County for a permit to carry a handgun, once those applications have been approved or denied by the Chief Police Officer or Superintendent, and either issuing or denying a permit. His official address is Middlesex County Courthouse, 56 Paterson Street, New Brunswick, NJ 08903. He is being sued in his official capacity, insofar as he performs the functions delegated him by N.J.S.A. 2C:58-4.

24.     Defendant Robert Brennan is the Chief Police Officer of Hopatcong, New Jersey. Pursuant to N.J.S.A. 2C:58-4, he is responsible for receiving applications from residents of

Hopatcong for a permit to carry a handgun, investigating the applicant, and either approving or denying the application. His official address is Hopatcong Police Department, 111 River Styx Road, Hopatcong, New Jersey 07843. He is being sued in his official capacity.

25.     Defendant N. Peter Conforti is a Judge of the Superior Court of New Jersey, Law Division, Sussex County. Pursuant to N.J.S.A. 2C:58-4, he is responsible for reviewing applications from residents of Sussex County for a permit to carry a handgun, once those applications have been approved or denied by the Chief Police Officer or Superintendent, and either issuing or denying a permit. His official address is Sussex County Courthouse, 43-47 High Street, Newton, NJ 07860. He is being sued in his official capacity, insofar as he performs the functions delegated him by N.J.S.A. 2C:58-4.

## FACTUAL ALLEGATIONS

### New Jersey's "Justifiable Need" Requirement

26.     New Jersey law generally forbids any person to "ha[ve] in his possession any handgun . . . , without first obtaining a permit to carry the same." N.J.S.A. 2C:39-5(b). In practice, permits are rarely given. While state law provides certain exemptions to this general ban— including one for "keeping or carrying [a firearm] about [one's] place of business, residence, premises or other land owned or possessed by him," *id.* § 2C:39-6(e), these exemptions do not allow the carrying of a handgun in public, either openly or concealed, without first obtaining a nearly impossible to obtain permit. Violating this ban is a crime in the second degree, punishable by between five and ten year's imprisonment and a fine of up to $150,000. *Id.* §§ 2C:39-5(b), 2C:43-3(a)(2), 2C:43-6(a)(2).

27.     New Jersey accordingly allows an individual to carry a handgun in public only if he first obtains a permit to do so (a "Handgun Carry Permit"). To be eligible for a Handgun Carry Permit, an applicant must satisfy numerous criteria. For example, he must not have been convicted

of any crime. He also must not have been convicted of any offense involving an act of domestic violence; must not be addicted to controlled substances, mentally infirm, or an alcoholic; must not be subject to certain restraining orders; and must not be listed on the FBI's Terrorist Watchlist. *Id.* §§ 2C:58-4(c); 2C:58-3(c). An applicant must also pass criminal and mental health background checks, *id.* § 2C:58-4(c), must provide three reputable references who certify that he "is a person of good moral character," *id.* § 2C:58-4(b), and must have satisfied extensive firearms safety training requirements, N.J.A.C. 13:54-2.4(b).

28.     In addition to these rigorous screening and training requirements, a law-abiding citizen may only be granted a Handgun Carry Permit if he demonstrates "that he has a justifiable need to carry a handgun." N.J.S.A. 2C:58-4(c)—a requirement almost no one can ever satisfy.

29.     N.J.S.A. 2C:58-4(c) provides that "in the case of a private citizen," the "justifiable need" requirement is satisfied only if the applicant can "specify in detail the urgent necessity for self-protection, as evidenced by specific threats or previous attacks, which demonstrate a special danger to the applicant's life that cannot be avoided by reasonable means other than by issuance of a permit to carry a handgun." *Id.* The statute further provides that "[w]here possible the applicant shall corroborate the existence of any specific threats or previous attacks by reference to reports of such incidents to the appropriate law enforcement agencies." *Id.* It is this unusual and nearly impossible to overcome burden that precludes nearly every law abiding New Jerseyan from obtaining a permit to carry a handgun.

30.     In further interpreting this "justifiable need" requirement, New Jersey's Supreme Court has determined that "[g]eneralized fears for personal safety are inadequate, and a need to protect property alone does not suffice." *In re Preis*, 573 A.2d 148, 152 (N.J. 1990).

31.     Accordingly, typical law-abiding citizens of New Jersey—the vast majority of responsible citizens who cannot "demonstrate a special danger to [their] life" as "evidenced by specific threats or previous attacks," N.J.S.A. 2C:58-4(c)—effectively remain subject to a flat ban on carrying handguns outside the home, even though the Constitution provides that the right to keep and bear arms belongs to "the people." As the Supreme Court explained in *Heller*: "in all six other provisions of the Constitution that mention 'the people,' the term unambiguously refers to all members of the political community, not an unspecified subset." 554 U.S. at 580.

### New Jersey's Handgun Carry Permitting Process

32.     To obtain a Handgun Carry Permit, an individual must first apply to the Chief Police Officer of the municipality where he resides—or, if he resides out of State or in a municipality without a Chief Police Officer, to the Superintendent of State Police. N.J.S.A. 2C:58-4(c). Only if the officer (or the Superintendent) concludes, after investigation, that the applicant meets all statutory requirements—including the "justifiable need" standard—may he approve an application for a Handgun Carry Permit. *Id.*

33.     If the application is approved by the Chief Police Officer or Superintendent, the applicant shall then present it to the Superior Court of the county where he resides. *Id.* § 2C:58-4(d). If the application is denied, the applicant may also appeal that denial to the Superior Court. *Id.* § 2C:58-4(e). In either case, the Superior Court must then independently determine whether the applicant has satisfied all statutory requirements and "has a justifiable need to carry a handgun." *Id.* § 2C:58-4(d).

34.     If the Superior Court concludes that these requirements are met, it may then issue a Handgun Carry Permit—or, it may "at its discretion issue a limited-type permit which would restrict the applicant as to the types of handguns he may carry and where and for what purposes

such handguns may be carried." *Id.* But the Superior Court is not bound by the decision of the Chief Police Officer and can also deny a permit that was approved by the Chief Police Officer.

35. In reviewing approved applications and issuing permits, the Superior Court acts as an "issuing authority" and performs "essentially an executive function" that is "clearly non-judicial in nature." *In re Preis*, 573 A.2d at 151, 154.

### Plaintiffs' Inability to Obtain Handgun Carry Permits

36. Plaintiff Mazahreh is an adult citizen and resident of New Jersey. He is not a law enforcement official or a member of the armed forces, and he does not fall within any of the other exceptions enumerated in N.J.S.A. 2C:39-6 to New Jersey's ban on carrying handguns in public.

37. Plaintiff Mazahreh does, however, possess all of the qualifications necessary to obtain a Handgun Carry Permit that are enumerated in N.J.S.A. 2C:58-4; 2C:58-2(c). For example, he has not been convicted of any crime or a domestic violence offense; he is not addicted to controlled substances, mentally infirm, or an alcoholic; he is not subject to any restraining orders; and he is not listed on the FBI's Terrorist Watchlist. He has also passed all required background checks, has provide the three required references, and has satisfied the State's firearms safety training requirements.

38. Plaintiff Mazahreh does not face any special danger to his life. He does, however, desire to carry a handgun in public for the purpose of self-defense. Plaintiff and his wife own a grocery store.  At times he handles large amounts of cash and fears for his safety and the safety of his wife when doing so. Accordingly, Plaintiff Mazahreh desires to carry a handgun for self-defense when he is in public, and he would do so now, were it not for Defendants' enforcement of New Jersey's ban on the public carrying of handguns.

39.     On February 11, 2020, Plaintiff Mazahreh applied to Richard J. Meder, the Chief of Police for Medford Township, the town where Mr. Mazahreh resides, for a permit to carry a handgun in public.

40.     On August 31, 2020, after investigation, Defendant Meder denied Plaintiff Mazahreh's application. Letter from Meder, Chief of Police, to Mr. Mazahreh (August 31, 2020) (attached as Exhibit 1). Defendant Meder did not determine that Mr. Mazahreh was ineligible for any of the reasons enumerated in N.J.S.A 2C:58-3(c), nor did he dispute that Mr. Mazahreh is "thoroughly familiar with the safe handling and use of handguns," *id.* § 2C:58-4(c), as that phrase is defined in N.J.A.C. 13:54-2.4(b). Instead, Chief Meder concluded that Mr. Mazahreh failed to show a "justifiable need" to carry a firearm in public, because he did not "demonstrate a special danger to the [his] life" on the basis of "specific threats or previous attacks." N.J.S.A 2C:58-4(c); N.J.A.C. 13:54-2.4(d)(1).

41.     Plaintiff Mazahreh reasonably chose not to incur the very substantial cost to appeal this denial to the Superior Court of New Jersey because he believed that the Court would affirm his denial, as Plaintiff Mazahreh is unable to demonstrate that he has "justifiable need."

42.     In light of Defendant's denial of his application, Plaintiff Mazahreh continues to refrain from carrying a handgun outside the home for self-defense in New Jersey for fear of arrest and prosecution. Plaintiff Mazahreh would carry a handgun in public for self-defense in New Jersey were it lawful for him to do so.

43.     Plaintiff De Almeida is an adult citizen and resident of New Jersey. He is not a law enforcement official or a member of the armed forces, and he does not fall within any of the other exceptions enumerated in N.J.S.A. 2C:39-6 to New Jersey's ban on carrying handguns in public.

44.     Plaintiff De Almeida does, however, possess all of the qualifications necessary to obtain a Handgun Carry Permit that are enumerated in N.J.S.A. 2C:58-4; 2C:58-2(c). For example, he has not been convicted of any crime or a domestic violence offense; he is not addicted to controlled substances, mentally infirm, or an alcoholic; he is not subject to any restraining orders; and he is not listed on the FBI's Terrorist Watchlist. He has also passed all required background checks, he can provide the three required references, and as a firearms instructor he is able to demonstrate that he is "thoroughly familiar with the safe handling and use of handguns," and he would take additional training if required to qualify for a Handgun Carry Permit.

45.     Plaintiff De Almeida does not face any special danger to his life. He does, however, desire to carry a handgun in public for the purpose of self-defense. As a federally and State licensed dealer in firearms, Plaintiff De Almeida is sometimes required to travel though the State of New Jersey to retrieve large collections of firearms from estate sales. When travelling through the State in possession of such a large number of firearms he is concerned for his safety. Accordingly, Plaintiff De Almeida desires to carry a handgun for self-defense when he is in public, and he would do so now, were it not for Defendants' enforcement of New Jersey's ban on the public carrying of handguns.

46.     Plaintiff De Almeida did not apply to Thomas Bryan, the Chief of Police for Edison Township, the town where Mr. De Almeida resides, for a permit to carry a handgun in public. Plaintiff De Almeida knows that he cannot demonstrate an "urgent necessity for self-protection, as evidenced by specific threats or previous attacks, which demonstrate a special danger to the

applicant's life that cannot be avoided by reasonable means other than by issuance of a permit to carry a handgun," and therefore submitting an application would be futile, as New Jersey law would require that it be denied.

47.     He also fears having a permit denial on his record, because he knows that in many instances other types of firearm permit applications will require that he disclose any past permit denials—which may work to prejudice such future applications.

48.     Plaintiff De Almeida has also been a longshoreman for the past 16 years, credentialed by the Waterfront Commission of New York Harbor. Such credentialing also requires substantial background checks, including a question as to whether the individual has ever been denied a firearms permit. As such, not only has Plaintiff De Almeida been subject to repeated and unusually intense levels of background checking, but the denial of a carry permit could potentially jeopardize his certification as a longshoreman.

49.     In light of the futility of submitting an application, Plaintiff De Almeida continues to refrain from carrying a handgun outside the home for self-defense in New Jersey for fear of arrest and prosecution. Plaintiff De Almeida would carry a handgun in public for self-defense in New Jersey were it lawful for him to do so.

50.     Plaintiff Swenson is an adult citizen and resident of New Jersey. He is not a law enforcement official or a member of the armed forces, and he does not fall within any of the other exceptions enumerated in N.J.S.A. 2C:39-6 to New Jersey's ban on carrying handguns in public.

51.     Plaintiff Swenson does, however, possess all of the qualifications necessary to obtain a Handgun Carry Permit that are enumerated in N.J.S.A. 2C:58-4; 2C:58-2(c). For example, he has not been convicted of any crime or a domestic violence offense; he is not addicted to controlled substances, mentally infirm, or an alcoholic; he is not subject to any restraining orders;

and he is not listed on the FBI's Terrorist Watchlist. He has also passed all required background checks, he can provide the three required references, and as a handgun owner for 17 years he is able to demonstrate that he is "thoroughly familiar with the safe handling and use of handguns," and he would take additional training if required to qualify for a Handgun Carry Permit.

52.     Plaintiff Swenson does not face any special danger to his life. He does, however, desire to carry a handgun in public for the purpose of self-defense. As Vice President of Engineering for a computer installation company, Plaintiff Swenson travels all over the State of New Jersey to perform installations, and he sometimes must travel to dangerous neighborhoods to do so. On multiple occasions, Plaintiff Swenson has turned down work because of a concern for his safety on the job. Accordingly, Plaintiff Swenson desires to carry a handgun for self-defense when he is in public, and he would do so now, were it not for Defendants' enforcement of New Jersey's ban on the public carrying of handguns.

53.     Plaintiff Swenson did not apply to Robert Brenner, the Chief of Police for Hopatcong Township, the town where Mr. Swenson resides, for a permit to carry a handgun in public. Plaintiff Swenson knows that he cannot demonstrate an "urgent necessity for self-protection, as evidenced by specific threats or previous attacks, which demonstrate a special danger to the applicant's life that cannot be avoided by reasonable means other than by issuance of a permit to carry a handgun," and therefore submitting an application would be futile, as New Jersey law would require that it be denied.

54.     He also fears having a permit denial on his record, because he knows that in many instances other types of firearm permit applications will require that he disclose any past permit denials—which may work to prejudice such future applications.

55.     In light of the futility of submitting an application, Plaintiff Swenson continues to refrain from carrying a handgun outside the home for self-defense in New Jersey for fear of arrest and prosecution. Plaintiff Swenson would carry a handgun in public for self-defense in New Jersey were it lawful for him to do so.

56.     Plaintiffs NRA, ANJRPC, and CNJFO have at least one member who has had an application for a Handgun Carry Permit denied solely for failure to satisfy the "justifiable need" requirement.

57.     Plaintiffs NRA, ANJRPC, and CNJFO have numerous members who wish to carry a handgun outside the home for self-defense but have not applied for a Handgun Carry Permit because they know that, although they satisfy or can satisfy all other requirements of N.J.S.A. 2C:58-4, they are unable to satisfy the "justifiable need" requirement. But for Defendants' continued enforcement of the New Jersey laws and regulations set forth above, those members would definitely carry a handgun outside the home for self-defense but refrain from doing so for fear of arrest and prosecution.

## COUNT ONE

### 42 U.S.C. § 1983 Action for Deprivation of
### Plaintiffs' Rights under U.S. CONST. amends. II and XIV

58.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

59.     The Second Amendment's guarantee of "the right of the people to keep *and bear Arms*" secures to law-abiding, responsible, adult citizens the fundamental constitutional right to bear arms outside the home. U.S. CONST. amend. II (emphasis added).

60.     This Second Amendment right to bear arms in public applies against the State of New Jersey under U.S. CONST. amend. XIV.

61.     This Second Amendment right to bear arms in public cannot be subject to a government official's discretionary determination of whether a law-abiding citizen has a "justifiable need" to exercise that right.

62.     A government restriction that limits the right to bear arms in public to only those few, favored citizens who can demonstrate that they face a special danger to their life effectively operates as a flat ban on the carrying of firearms by *typical* law-abiding citizens, who by definition cannot demonstrate this kind of *atypical* need to bear arms.

63.     By infringing the Second Amendment right to bear arms in public in these ways, the New Jersey laws and regulations discussed in the foregoing allegations violate the Second Amendment, which applies to Defendants by operation of the Fourteenth Amendment, both facially and as applied to Plaintiffs Mazahreh, De Almeida, Swenson, and members of NRA, ANJRPC, and CNJFO, and they are therefore invalid.

## PRAYER FOR RELIEF

64.     Plaintiffs pray for an order and judgment:

a.     Declaring that New Jersey's "justifiable need" requirement violates the Second and Fourteenth Amendments and is thus devoid of any legal force or effect;

b.     Enjoining Defendants and their employees and agents from denying Handgun Carry Permits to applicants on the basis of New Jersey's "justifiable need" requirement;

c.     Enjoining Defendants and their employees and agents from enforcing the New Jersey laws and regulations establishing and defining the "justifiable need" requirement, including N.J.S.A 2C:58-4(c) and N.J.A.C. 13:54-2.4(d);

      d.      Ordering Defendants and their employees and agents to issue Handgun Carry Permits to Plaintiffs Mazahreh, De Almeida, Swenson, and members of Plaintiffs NRA, ANJRPC, and CNJFO;

      e.      Awarding Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action, pursuant to 42 U.S.C. § 1988; and

      f.      Granting such other and further relief as this Court deems just and proper.


Dated: March 8, 2021                                      Respectfully submitted,


<u>s/Daniel L. Schmutter</u>
Daniel L. Schmutter
HARTMAN & WINNICKI, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040
(201) 967-0590 (fax)
dschmutter@hartmanwinnicki.com
*Attorneys for Plaintiffs*

**DECLARATION OF COUNSEL PURSUANT TO LOCAL CIV. R. 11.2**

The undersigned hereby states that the matter in controversy challenges some of the same conduct of some of the Defendants as the following action pending in the District of New Jersey: Bennett v. Davis, No. 20-cv-15406.

I declare under penalty of perjury that the foregoing is true and correct.

<u>s/Daniel L. Schmutter</u>
Daniel L. Schmutter
HARTMAN & WINNICKI, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040
(201) 967-0590 (fax)
dschmutter@hartmanwinnicki.com

*Attorneys for Plaintiffs*

Dated: March 8, 2021